Dec. 3,
  1912.

### BOSTON & MAINE RAILROAD v. STATE.

The supreme court has power to revise the findings of the state board of equalization upon an appeal, but it cannot revise the rulings made by that tribunal in a proceeding before it.

Although the supreme court does not ordinarily consider a question of law when there is no provision for judgment, it may do so at any stage of the proceedings when it appears that a final disposition of the controversy will be hastened thereby.

Under section 1, chapter 64, Public Statutes, and the amendments thereto, the property of railroad corporations should be taxed at a rate as nearly equal as may be to the average rate upon all other taxable property throughout the state, and not at the average rate imposed upon such property as is in fact taxed.

In determining the value of "other property" for the purpose of assessing the taxes of railroad corporations, the state board of equalization is not restricted to the returns of local assessors, but is required to investigate the subject for itself and to correct such returns if any property is found to have been undervalued or to have escaped taxation.

The rules of evidence applicable in ordinary judicial proceedings are to be observed upon the trial of an appeal from an assessment of taxes.

PETITION, for an abatement of the tax assessed against the plaintiffs for the year 1911.  At the hearing before the tax commission the plaintiffs offered to show (1) that of the taxable intangibles belonging to persons who died between January 1, 1909, and April 1, 1910, only six per cent were taxed at the assessment next preceding the death of the owners; (2) that of the undischarged mortgages recorded in the state between April 1, 1904, and April 1, 1909, only seven per cent were taxed to the mortgagees on the latter date;

(3) that the individual deposits in New Hamphsire national banks on April 1, 1911, were more than double the whole amount of intangibles returned for taxation. The commission excluded the evidence, subject to the plaintiffs' exception. Facts agreed.

*Branch & Branch* and *Streeter, Demond & Woodworth* (*Oliver W. Branch* orally), for the plaintiffs.

*James P. Tuttle*, attorney-general (by brief and orally), for the state.

Young, J.   The tax from which the plaintiffs appeal was assessed by the tax commission, but it was acting under the provisions of chapters 63 and 64, Public Statutes, when it made the assessment, and not under chapter 169, Laws of 1911.   This appeal therefore stands just as it would if the tax had been assessed by the state board of equalization; and while this court has power to revise the findings of that board on appeal, it has no power to revise the rulings it makes in a proceeding before it.   The issue on the trial of the appeal is whether the plaintiffs are aggrieved by the tax.   The validity of the steps the board took in assessing it are not in issue. In other words, the plaintiffs' right to relief does not depend upon the validity of their exceptions, but upon section 10, chapter 64, Public Statutes, which provides that if a railroad is aggrieved by a tax assessed against it, it may appeal to the supreme court which shall make such orders "as justice may require."

The tax was assessed under section 1, chapter 64, Public Statutes, as amended by chapter 66, Laws of 1909, which provides that the property of railroads shall be taxed "at a rate as nearly equal as may be to the average rate of taxation  .  .  .   upon other property throughout the state, excepting property specially taxed." Consequently, the test to determine whether the plaintiffs are entitled to relief is not to inquire in respect to how the assessment was made, but whether their property is assessed for a greater per cent of its true value than the average of all the other property in the state, excepting property specially taxed; for if it is not so assessed they are not entitled to an abatement, even if the commission acted illegally in making the assessment.   *Page v. Portsmouth, ante,* 372.

Both parties concede that this is the rule, but disagree as to what is intended by "other property."   The plaintiffs say other *taxable* property;  the state, other *taxed* property.   The parties also agree

that the test to decide which of these contentions is sound is to inquire what the legislature intended when it enacted section 1, but they disagree as to the court's duty in the matter. The state says the question is not properly before the court at this time and should not be considered for that reason. It is true that when there is no agreement for judgment the court does not usually consider a question of law, but that is not an invariable rule. In fact, the court is accustomed to consider such questions at any stage of the proceedings, when it finds, as in this case, that that will probably hasten the final disposition of the controversy.

Title 9 of the Public Statutes, of which chapter 64 forms a part, covers the subject of taxation. It defines the property that is taxable (*c*. 55) and the places where and the persons to whom it shall be taxed (*c*. 56). It provides that the owners shall list (*c*. 57) and that the assessors shall value (*c*. 58) and tax it (*c*. 59). It also provides for collecting the tax (*cc*. 60, 61) and for the taxing of railroads (*c*. 64) and savings banks (*c*. 65). In short, this title relates to taxation and taxable property; and an examination of its provisions will show that in every other instance in which "property" is used without qualifying words, *taxable* property is intended. Consequently, it is probable that that is the sense in which it is used in this section. The fact that section 10, chapter 64, Public Statutes, was enacted to put railroads on the same footing in respect to taxation as other taxpayers (*Boston etc. R. R.* v. *State,* 60 N. H. 87, 94) tends to the conclusion that the test to determine whether a railroad is entitled to an abatement is to inquire whether the true value of its property is to the tax assessed against it as the true value of all the other *taxable* property in the state is to the tax assessed against it; for that is the test which is applied in the case of other taxpayers. *Amoskeag Mfg. Co.* v. *Manchester,* 70 N. H. 200, 205.

The provisions of section 11, chapter 59, Public Statutes, tend to the same conclusion; for that section makes the taxpayer's compliance with the provisions in respect to furnishing the assessors with an accurate list of all his *taxable* intangibles (*c*. 57) a condition precedent to an abatement. As has already appeared, the purpose the legislature had in view when it enacted section 10, chapter 64, Public Statutes, was to put railroads on an equality with the average taxpayer. *Boston etc. R. R.* v. *State, supra.* The fact that that was its purpose tends to the conclusion that the property it had in mind when it enacted section 1 was *taxable* property; for in so

far as the question of equality of taxation is concerned, it can make no difference to a railroad whose property is valued for the purposes of taxation at more than fifty per cent of its true value whether all the other *taxable* property in the state is assessed at fifty per cent of its true value, or whether fifty per cent of it escapes taxation. In either case the railroad is compelled to bear more than its fair share of the public burden, for in either case its property is taxed at a higher rate than the average taxpayer's. In short, the context and the purpose of the statute tend to the conclusion that by "other property" other *taxable* property is intended; and that is the way section 1 was construed in *Boston & Maine R. R.* v. *State,* 75 N. H. 513, 517.

What evidence is there to rebut this conclusion? The state contends that that was not the sense in which "other property" was used, because giving the plaintiffs an abatement for that reason increases unjustly the taxes of other innocent taxpayers. Although it is true that giving the plaintiffs an abatement because taxable intangibles escaped taxation will increase unjustly the taxes of a large number of innocent taxpayers, that fact is not sufficient to rebut the presumption that *taxable*—not *taxed*—property was intended; for notwithstanding the effect of the abatement on innocent taxpayers is relevant to the issue of the intention of the legislature when it enacted section 1, its tendency to prove that *taxed* rather *taxable* property was intended is slight.

In so far as the distribution of an abatement is concerned, the effect on innocent taxpayers is the same whether the abatement is given because *taxed* property was undervalued, or because *taxable* property escaped taxation. The necessary effect of an abatement for either cause is to increase unjustly the burden of every taxpayer in the state whose property is assessed for a greater per cent of its true value than the average of other property; that is, the injustice to other taxpayers of which the state complains is not peculiar to abatements which are given because taxable property escaped taxation, but to the failure of the scheme devised by the legislature for equalizing taxation to provide for imposing the abatement on those whose property either was undervalued or escaped taxation. Consequently, the effect of the abatement on innocent taxpayers has no particular tendency to prove that when the legislature said "other property" it intended *taxed* rather than *taxable* property. In short, the legislature undertook to equalize taxation by giving an abatement to a taxpayer whose property is valued at a higher

per cent of its true value than all the other property in the taxing district. This scheme makes all the other taxpayers in the district defendants and divides the amount of the abatement among them; that is, it does not impose the abatement on those whose property is undervalued or escapes taxation, but divides it among all the taxpayers, the innocent as well as the guilty.

It may be conceded that this is not a very exact way of doing justice; but the fact that the legislature failed to devise a more exact scheme has no tendency to prove that an abatement is to be given when the inequality is caused by undervaluing taxed property and not given when it is caused by taxable property escaping taxation. The only logical conclusion that can be drawn from the legislature's failure to impose the abatement on those who ought to bear it is that it thought its scheme was accurate enough for practical purposes; for if it had not thought that the trouble and expense incident to the re-assessment (which would be necessary to impose the abatement on those who ought to bear it) would more than counterbalance the injustice to other taxpayers, it is probable that it would have conferred the same power on the court that chapter 169, Laws of 1911, confers on the tax commission. In other words, it would have made it the duty of the court to do whatever is necessary to equalize not only the plaintiffs' tax, but that of all the other taxpayers in the state.

Although the state's contention, that the board of equalization should consider only the returns of the local assessors in determining the value of "other property," would be entitled to great weight if it were addressed to a legislative body, it has no merit as a legal proposition; for the act which created the board and prescribed its duties provides that it "shall determine . . . whether the personal estate of the several towns has been uniformly estimated, according to the best information which can be derived from the statistics of the state or from any other source." Laws 1878, c. 73, s. 7. In other words, the act which prescribes the board's duties provides in terms that it shall not accept the returns of the assessors as conclusive of the value of tangible or intangible taxable property, but shall investigate the matter for itself every fourth year and correct these returns if it finds that tangible or intangible taxable property has been undervalued or has escaped taxation. P. S., c. 63, s. 4.

It is competent, therefore, for the plaintiffs to show that taxable intangibles excaped taxation, but they must show it by legal evi-

dence.   By this is not intended that they will not be given the same latitude in the production of evidence that they would be given in the ordinary judicial proceeding.   What is intended is to emphasize the fact that a tax appeal is a judicial proceeding (*Boston & Maine R. R.* v. *State, ante*, 86) and that the same rules apply in the trial of an appeal, in so far as the production of evidence is concerned, as in other judicial proceedings.   To illustrate: if on the trial of their appeal the plaintiffs offer the evidence the tax commission excluded, the test to determine the issue of admissibility will be to inquire whether it is too remote, or whether it is likely to elucidate or to confuse the main issue, and not, as they contend in their brief, whether it is relevant to any of the various issues that may arise in the course of the trial.

*State's motion to dismiss denied.*

All concurred.