## Paducah Cooperage Company v. King Mill & Lumber Company.

(Decided January 29, 1929.)

574

BRADSHAW & MacDONALD for appellant.

EATON & BOYD for appellee.

Opinion of the Court by Chief Justice McCandless
—Reversing.

On November 8, 1923, the Paducah Cooperage Company sold and conveyed to the King Mill & Lumber Company approximately 11,000 acres of land in Colbert and Franklin counties, Ala., at the price of $60,000. Payment of the entire consideration was deferred and represented by four notes of $15,000 each, maturing on the 1st day of January, 1924, 1925, 1926, and 1927, respectively. The conveyance was by deed of general warranty, and simultaneous with its execution the purchaser executed the notes mentioned and a mortgage on the lands for the security of the purchase money. The mortgage contains the following provision:

> "It is further agreed and understood that the said mortgagor (vendee of the deed) shall pay all taxes levied upon the property hereby conveyed during the life of this mortgage. . . . It is agreed between the parties to these presents that should default be made in any part of the indebtedness secured by this mortgage or in any taxes, fees, charges or expenses whatsoever that may accrue against said property, then or in either of such events such mortgagee (vendor in deed) its successors and assigns shall have the power at its option to declare all of said indebtedness due."

Subsequently a controversy arose as to which of the parties should pay the 1924 taxes and after some penalties accrued the Lumber Company (vendee) paid the taxes and later filed this suit against the Cooperage Company (vendor) to recover from it $1,200, the amount of taxes thus paid. The case was heard by the court on the law and facts and judgment rendered for the plaintiff, from which the defendant appeals.

There were introduced in evidence the following Alabama statutes:

"From and after the first day of October of each year, when property becomes assessable the state shall have a lien upon each and every piece or parcel of property owned by any taxpayer for the payment of all taxes which may be assessed against him and upon each piece and parcel of property real or personal assessed to owner unknown which lien shall continue until such taxes are paid, and the county shall have a like lien thereon for the payment of taxes which may be assessed by it. . . . These liens shall be superior to all other liens and shall exist in the order named and each of such liens may be enforced and foreclosed by sale for taxes as provided in this act, or as other liens upon property are enforced." Section 416. Laws Ala. 1919, p. 282.

It is admitted in the pleadings that as compiled by Henry C. Allen in 1923: sec. 113 of the Revenue Laws of Alabama provides that the assessor shall furnish blanks on which to make assessments.

"Sec. 114 of the Revenue Laws of Alabama provides that the return and listing of property *by the tax assessor* must commence on the first day of October of every year and shall be finished by him on the first day of January or February following."

"Sec. 116 provides that every person shall deliver to the tax assessor in his precinct on the first day of the assessor's appointment a list of all property which he owned on the first day of October of that year. This section further provides that if the owner fails to deliver such information within thirty days, after notice to him, the assessor shall secure a description of the owner's property from the public records in the county or by survey."

"Sec. 125 provides that after the 31st day of December in each year the assessor shall demand a description of the owner's property and that it shall be the duty of the taxpayer or the propety owner to return the list of his property to the assessor by the first Monday in February following."

"Sec. 156 provides that when the assessor has completed his assessment, valuation and equalization

work, he shall notify the Board of Review, and such board shall meet on the second Monday in April and shall equalize taxes not later than the first Monday in May.''

''Sec. 158 provides that the property owners may file with the Board of Review protests on assessments on or before the last Monday in May.''

''Sec. 160 provides that when the work of the Board of Review is finished the assessor shall enter upon the return lists the corrected values.''

Cf. sections 41, 42 and 52, Laws of Ala, 1919, p. 282. Secs. 30, 54, 56 and 58 Laws of Ala. 1923, p. 152.

An attorney testified for each party as to the proper construction to be given these statutes under the Alabama practice, it appearing that the exact question has not been raised in that state. It further appears from appellant's uncontradicted pleadings that none of the above property was assessed by the owner, and that, in conformity with the statutory procedure above outlined, the final assessment of the property was not effected until July 1, 1924. It is also alleged, and not denied, that part of the amount involved in this suit was paid for local school taxes which were levied by the authorized commissioners on June 1, 1924.

Appellee's contention is that upon the execution of the deed the title vested in the vendee; that thereupon an appreciable interval of time elapsed before the execution of the mortgage; that the mortgage is a mere security for the obligations assumed in the deed, and does not change the terms of that instrument; that these require a separate construction of those instruments, and, inasmuch as under the statute, section 416, supra, a lien for the 1924 taxes attached on the 1st of October, 1923, this was a valid incumbrance on the 8th of November, 1923, and embraced within the general warranty provisions of the deed, and rendered the vendor liable therefor, nonpayment of which constituted a breach of warranty; and that this warranty in the deed was unaffected by the stipulations in the mortgage relating to the payment of taxes. It being further argued that, as the mortgage was only a security for the debt, the reference to payment of taxes therein was merely to prevent future taxes from accumulating and impairing the vendor's security for the payment of its debt, and this seems to have been the view of the trial court.

The above conclusion is based on the deed being construed separately from the mortgage. But as all the lien provisions in the mortgage could have been embodied in the deed, and both instruments were executed simultaneously, it is evident that they formed parts of the same transaction and are to be construed together.

It is also evident that section 416 of the Alabama statutes merely fixes the time at which a lien for taxes attaches to property subject to taxation, and that this statute does not restrict the right of the parties to contract for the adjustment of such burdens between themselves or affect the construction of contract provisions relating thereto. It logically follows that the case turns upon the construction to be given the stipulations in the mortgage for the payment of taxes. Those provisions are for the mortgagor (vendee) "to pay all taxes levied upon the property during the life of this mortgage. . . . And if he should default . . . on any taxes . . . that may accrue against said property . . . such mortgagee shall have the power at its option to declare all of said indebtedness due." The right of precipitation in the second clause is based on default of payment of taxes for which liability was assumed in the first instance. This power could be exercised when the mortgagor defaulted on any taxes that *may* accrue, and it is clear that the words "levied" and "may accrue" are used synonymously. The word "accrue," when used in a legal sense, is thus defined: "To come into existence as an enforceable claim." "To vest as a right, as a cause of action has accrued when the right to sue has become vested." Webster's New International Dictionary. Cf. 25 Cyc. 1066; 1 C. J. 732, and notes; Henderson v. Fielder, 185 Ky. 482, 215 S. W. 187; City of Covington v. Patterson, 191 Ky. 370, 230 S. W. 542. As here used a similar meaning is generally attributed to the word "levied" which has been thus defined: "To impose or assess." "To impose and collect under authority of law." "To raise or collect by assessment." "To charge a sum of money already ascertained against a person or property subject to the charge." "To fix the rate at which prpoperty is to be taxed." See Gray v. Board of School Inspectors of Peoria, 231 Ill. 63, 83 N. E. 95. "Levied" as applied to taxes is held to mean "the extension of taxes against taxable property." Pettibone v. W. Chicago Park Commissioners, 215 Ill. 304, 74 N. E. 387. "The amount ac-

cruing from a tax or execution." State ex rel. Ledwith v. Brian, 84 Neb. 30, 120 N. W. 916. The word "levied" means, in some cases, to raise and collect by authority of government the amount of taxes to be raised, and in either case means to enter the taxes in the tax book and collect them. Union Trust Co. of Maryland v. State, 116 Md. 368, 81 A. 873.

It is evident that the parties did not consider unascertained *taxes* upon unassessed property as either "levied" or "accrued," even though the state was given an inchoate lien upon the property enforceable when the taxes accrued. But, on the contrary, they intended for these words to apply to such taxes as at least had a tangible existence in a fixed amount. And as the property in question was not assessed or the amount of taxes ascertained for months after the execution of the contract, it was meant for them to be paid by the mortgagor (vendee). It follows that the court should have dismissed the petition and have given defendant judgment for costs, and it erred in rendering judgment for plaintiff.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.