[Civ. No. 24540. Second Dist., Div. Two. Apr. 28, 1960.]

CITY OF BURBANK, Petitioner, v. METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA et al., Respondents.

452

Archie L. Walters, City Attorney (Burbank), Musick, Peeler & Garrett, Gerald G. Kelly and Richard T. Apel for Petitioner.

Charles C. Cooper, Jr., General Counsel, John M. Davenport and William A. Parsons, Deputy General Counsel, for Respondents.

ASHBURN, J.—Petitioner City of Burbank seeks mandamus to compel respondent Metropolitan Water District of Southern California to credit upon 1960 and subsequent taxes levied by the district certain amounts paid by the city under the "in lieu" provisions of section 8, subdivision (h) of the Metropolitan Water District Act (Act 9129; 1 Deering's Water Code, p. 1108; §§ 35-1 to 35-15, inclusive, of Appendix to West's Water Code)—payments "in avoidance of taxes" upon property within the city, which payments for the years 1953-1959, inclusive, proved to be excessive. This excess was revealed by the decision in *General Dynamics Corp.* v. *County of Los Angeles,* 51 Cal.2d 59, 64-65 [330 P.2d 794], which holds that property taxes cannot be levied by the state or its agencies upon possessory interests in personal property—in that instance, property owned by the United States consisting of tools and equipment used by General Dynamics in producing goods and carrying out research for the armed forces. That decision was rendered on October 24, 1958.

The district is empowered and required to levy annual ad valorem taxes upon all "taxable property" within its limits (§ 8, subd. (b)); the amount to be derived from the territory within each member city is fixed separately (§ 8, subd. (c)); and each city, after making declaration of intention so to do and performing certain other antecedent acts, "may elect to pay out of the municipal funds of such city all, or the stated percentage, as the case may be, of the amount of tax which would otherwise be levied upon property within such city" (§ 8, subd. (d)), and thereupon (in case of election by the city to pay the whole tax) the ad valorem tax is not levied or collected by the district (§ 8.1). Section 8, subdivision (h) also

provides in part: "Cities, the areas of which, in whole or in part, are included within metropolitan water districts incorporated hereunder, are hereby authorized to pay to such districts, out of funds derived from the sale of water or other funds not appropriated to some other use, such amounts as may be determined upon by the governing bodies . . . having control of such funds, thereof, respectively. Such payments may be made in avoidance of taxes as herein provided, or otherwise, and shall not be deemed gratuitous or in the nature of gifts, but shall be deemed payments for water or services in connection with the district of water. Any city making any such payment to any district incorporated hereunder, whether in avoidance of taxes or otherwise, *shall receive credit therefor* and the amount of the payment so made by any city shall be deducted from the amount of taxes which would otherwise be levied against property lying therein as herein provided. *In the event that payment so made by any city shall exceed the amount of taxes which would otherwise have been levied against property within such city, the amount of such excess without interest shall be carried over and applied in reduction of taxes levied, or which would otherwise have been levied during the ensuing year or years.*" (Emphasis added.)

█ The entire scheme of "avoidance" or "in lieu" payments is geared to the fundamental (and statutory)[1] concept that the district can raise tax money only from taxable property; the phrases "in avoidance" and "in lieu" are intended to have their normal connotation of a substitute. █ The statute bears no implication that the district may thus acquire more money than it could raise by direct taxation; hence the provision for crediting upon future taxes any excess found to have been concealed in the payment actually made for any given year.

---

[1]The first annual report of the District says, at page 311: "'All bonds issued by the District are general tax obligations, and the board of directors is under a statutory duty to levy sufficient taxes upon all taxable property, both real and personal, within the District, to meet the principal and interest requirements thereon. [§ 5, subd. (8); § 7, subd. (j).] The procedure for levying such taxes, together with any taxes levied for general District purposes, is prescribed. [§ 8.]'"

The validation Act of 1933 (Stats. 1933, ch. 162, p. 612) says in § 5: "Both the principal and interest of said bonds shall be paid from an annual tax levied upon all the taxable property within such district in the manner and under the procedure prescribed in said act, and all of the taxable property within such district shall be and remain liable to taxation for the payment of the principal and interest of said bonds as herein and in said act provided. . . .'"

Stated in sequence and somewhat in detail the "avoidance" procedure is as follows. On or before the 10th day of December in any year the governing body of any member city may declare its intention to pay out of municipal funds the whole or a stated percentage of the amount of taxes to be derived from the city area "as such amount shall be fixed in the next succeeding August by resolution of the board of directors of the district. . . ." (§ 8.1.) Certified copies of the resolution declaring such intent shall be filed on or before December 10th with the controller of the district and the county assessor (§ 8.1). Not later than August 15th of the following year the county auditor must furnish to the district a certificate showing the assessed valuation of all property within the district lying in the county, with segregation of assessed values with respect to each city within the district (§ 8, subd. (a)). Thereupon, and not later than August 20th the board of directors of the district "shall by resolution determine the amount of money necessary to be raised by taxation during the fiscal year beginning the first day of July next preceding and shall fix the rate of taxation" based upon the "assessed valuation of *taxable property* in each county" and "shall levy a tax accordingly," which shall be sufficient to meet interest and sinking fund requirements of its bonded indebtedness and also sufficient to provide for all other district purposes (§ 8, subd. (b)). "The board of directors shall also cause to be computed and shall declare in said resolution the amount of money to be derived from the area of the district lying within each separate municipality by virtue of the tax levy. . . ." (§ 8, subd. (c).) On or before August 25th the governing board of each city which has made its declaration of intention in the previous December (provided same has been accepted by the controller of the district) "may elect to pay out of the municipal funds of such city all or the stated percentage, as the case may be, of the amount of tax which would otherwise be levied upon property within such city; provided, that such election shall be made in strict compliance with, and fulfillment of, said declaration of intention theretofore so made by such city. . . ." (§ 8, subd. (d).) Before the 1st of September the controller of the district transmits to the county auditor a statement of the tax rate to be applied to assessed property in each city, "which rate shall be the rate fixed by resolution of the board of directors

modified to the extent necessary to produce from each city or part thereof within the district, only the amount of money apportioned thereto in said resolution, *less any amount* paid or undertaken to be paid by such city, *or credited thereto as herein provided.*" (§ 8, subd. (e).) (Emphasis added.) The rates of levy for bond requirements and for other purposes are fixed separately, e.g., for 1953-1954 it was 19 cents upon each $100 assessed valuation for bond servicing and 6 cents per each $100 valuation for other district purposes. The county then collects the taxes for the benefit of the district at the rates specified by the controller's certificate (§ 8, subd. (f)), except in those instances where the city has previously elected to pay the whole tax from its municipal funds. Those municipalities which have elected to make "in lieu" payments proceed to do so "in avoidance of taxes" (§ 8, subd. (h)). "In the event that payment so made by any city shall exceed the amount of taxes which would otherwise have been levied against property within such city, the amount of such excess without interest shall be carried over and applied in reduction of taxes levied, or which would otherwise have been levied during the ensuing year or years. . . ." (§ 8, subd. (h).) "No such payments of money made in avoidance of taxes or otherwise, or such credit allowed by such board of directors, as hereinabove provided, shall apply to reduce the amount of taxes which would otherwise be levied against the property within such cities respectively, to meet interest and sinking fund requirements on outstanding bonded indebtedness of such district.

"Such certification and allowance shall be made on or before the first Monday in July, and the amount of money to be raised by taxation shall be computed with reference to the credit to be allowed as herein provided, but such credit may, in the discretion of the board of directors, be considered in connection with the amount of money to be raised by the next tax levy, or may be spread over subsequent years, not to exceed five." (§ 8, subd. (h).)

Commencing in 1953 and continuing through 1958, the certificates furnished by the auditor of the county of Los Angeles pursuant to section 8, subdivision (a) included amounts representing the assessed valuations of certain possessory interests in personal property located within the city of Burbank and being used in the performance of national defense contracts.

Prior to the General Dynamics decision the city when making its in lieu payments had specifically "reserved all rights to recover from the District all or any part of the sum elected to be paid, which represents the amount of the District tax which a court may hold to have been invalidly assessed and levied on property within the City of Burbank." Beginning with the fiscal year 1957-1958 a specified portion of each payment was made under protest and an expressed reservation of a right to seek refund of same.

The city's resolution Number 11276, declaring its election to make the avoidance payment for 1957-1958, declares as a predicate for its protest that a portion of its total payment of $508,296.84, to wit: $67,991.65, represents "the amount of taxes which would otherwise be levied for the purposes of said District upon certain personal property within said City of Burbank assessed to aircraft companies and which assessments have been protested by said aircraft companies on the ground that said personal property was owned by the United States of America and, hence, was exempt from local taxation, but which question of exemption is still in litigation, and until the final determination of such litigation the validity of such assessments will not be known or established." Petitioner has computed the amounts paid on account of such possessory interests as aggregating $216,203.91 and has demanded that said amount be credited to 1960 and subsequent taxes. The district has refused and hence this mandamus proceeding which is said to affect many other cities similarly situated.

Petitioner's supporting memorandum opens with this sentence: "The single issue presented by this petition is whether Respondents are required by law to carry over the amount of certain excess payments made by the City of Burbank and apply such amount to the reduction of District taxes which will be levied in the ensuing year or years against property lying within that city."

Respondents have appeared by way of general demurrer and memorandum of authorities. Counsel take the position that the city made a voluntary election to pay the amount fixed by the district upon the basis of the county auditor's certificate of assessed valuation of property within the city; that the election must be to pay all or part of "the amount of tax which would otherwise be levied upon property within such district"; that the district determines the amount nec-

essary to be raised for its uses by taxation and any city election must be to pay all or part of "such amount [as] shall be fixed in the next succeeding August by resolution of the board of directors" (§ 8.1); that this means the computed dollar amount fixed by the district as necessary for its needs; that taxes shall be assessed and collected at the rate fixed by the district. Counsel concede: "There are always additions to the assessment roll by reason of after-discovered property and reductions in collectible taxes shown on the assessment roll by reason of revisions of assessments or removal of publicly owned and other property from the roll." But regardless of the recognition of inevitable fluctuation in the amount collected, counsel insist that the city errs in its interpretation of the phrase of paragraph (h) of section 8: "In the event that payment so made by any city shall exceed *the amount of taxes which would otherwise have been levied against property within such city,* the amount of such excess without interest shall be carried over and applied in reduction of taxes levied, or which would otherwise have been levied during the ensuing year or years," (emphasis added)— that it errs in asserting that this means "legally levied" upon "taxable property."

It is fair to assume that prior to the General Dynamics decision taxing authorities generally believed that possessory interests in personal property were subject to ad valorem taxation; that the district would not have attempted to assess them had the General Dynamics rule been known to be the law, and that the county auditor would not mistakenly have included such interests in his certificate under section 8, subdivision (a) "showing the assessed valuation of all property within the district lying in the county."

Section 8, subdivision (h) provides that the amount paid by the city shall be deducted from the amount of taxes which "would otherwise be levied against property lying therein as herein provided," and that in the event of payment in excess of such amount the excess shall be carried over and applied in reduction of taxes levied or which would otherwise have been levied during the ensuing year or years. Section 8, subdivision (h), also provides that in the discretion of the directors of the district "such credit . . . may be spread over subsequent years, not to exceed five." Inasmuch as the district is specifically limited by section 8, subdivision (b) to levying a tax upon "taxable property" in each city or

other area of the county, it seems proper to give the phrase "property" elsewhere used in the statute the same signification. (See *Stillwell* v. *State Bar,* 29 Cal.2d 119, 123 [173 P.2d 313].)

The term "property" when used in taxing statutes normally connotes property subject to taxation. (See *Southern Pacific R.R. Co.* v. *Stibbens,* 103 Cal.App. 664, 671 [285 P. 374]; *Board of Com'rs. of Oklahoma County* v. *Ryan,* 107 Okla. 278 [232 P. 834, 838]; *Boston & M.R.R.* v. *State,* 76 N.H. 515 [85 A. 616, 618]; *Steedman* v. *United States* (Court of Claims), 35 F.Supp. 533, 535 [92 Ct.Cl. 123].) And the term "levy" carries the same implication. (*People* v. *Mahoney,* 13 Cal.2d 729, 735-736 [91 P.2d 1029]; *Paducah Cooperage Co.* v. *King Mill & Lumber Co.,* 227 Ky. 573 [13 S.W.2d 778, 780]; 84 C.J.S., § 349, p. 679.)

Counsel for respondent stress the fact that the avoidance payment made by the city must be the whole or a specified percentage of the computed sum, the number of dollars, which the district declares necessary for its purposes; that the city's election to pay and its payment are voluntary acts and that the election to pay a computed amount (§ 8, subdivision (c)) precludes any crediting of any excess upon future taxes. Petitioner's counsel assert that this argument leads to the conclusion that there never can be any carrying over or crediting of the excess payment. This does seem to be the logical result of respondent's argument.

Counsel for the district mistakenly relied, in oral argument, upon the statement of section 8, subdivision (h), that no payments made in avoidance of taxes or "such credit allowed by such board of directors" shall apply to reduce the amount of taxes otherwise levied to meet interest and sinking fund requirements on bonded indebtedness. That provision does not preclude reduction in the amount levied to meet "all other district purposes" per section 8, subdivision (b)(2); and the next subparagraph of section 8, subdivision (h) specifies that, though the amount collected by the district may not be reduced below bond servicing requirements, the credit arising from an excessive payment may be carried forward from year to year, not exceeding a total of five years. Though the language of this subparagraph starts with a reference to "certification and allowance" (which pertains to purchase of works or projects taken over by the district from

a city or other agency, as set forth in the first and second subparagraphs of section 8, subdivision (h)) its concluding language—"or may be spread over subsequent years, not to exceed five"—is so clearly in harmony with the earlier phrase —"shall be carried over and applied in reduction of taxes levied, or which would otherwise have been levied during the ensuing year or years"—that we are persuaded it is general in its application.

The district has received from the city funds which it could not have acquired by direct levy upon property; the certificate upon which the district predicated its tax rate was made by the county auditor, not by a city official; and there is no element of estoppel present. (*Cf. County of Los Angeles* v. *State Dept. Public Health,* 158 Cal.App.2d 425, 440 [322 P.2d 968].) Hence the district has no equitable claim to the moneys in question. Indeed we are told by counsel that refunds are being made by the district to taxpayers within cities which have not embraced the privilege of avoidance payments. Paragraph XLIV of the instant petition, admitted by the demurrer, avers that such refunds heretofore made aggregate $1,360,916.34.

Counsel for the district, hard pressed to explain away the right to credit upon which Burbank relies, argue that the Legislature interpreted section 8, subdivision (h), in a manner precluding the credit sought by petitioner when it enacted section 8.2 of the Act in 1945, amended in 1947. This section applies to any public agency whose corporate area is included within an overlying municipality,[2] the area of which municipality is included as a separate unit in a metropolitan

---

[2]Counsel for the district said upon oral argument that this means "those agencies which are not separate unit municipalities of Metropolitan."

The seventh annual report of the district says, at page 61 that the act was amended in 1945:

"To authorize a city, which is a part of an overlying municipality (for example, a municipal water district) that is included as a unit within a metropolitan water district, to elect to pay out of that city's funds the taxes levied by such metropolitan water district upon the property within that city (by adding Section 8.2).

"Prior to this amendment a metropolitan water district could deal only with its constituent units, and could not permit a city comprising only a part of such constituent municipality to pay out of that city's funds any part of the taxes levied by a metropolitan water district upon the property within that city, although any city that itself was a constituent unit of a metropolitan water district might elect to make such payment. The amendment corrects this lack of authority."

water district, and enables such agency to make "in lieu" payments in the same manner as provided in section 8.1.[3] It specifies in (d) that "so far as consistent with the provisions of this section 8.2, the provisions of paragraphs (d), (e), (f), (g) and (i) of Section 8 of this act shall apply." From this counsel argue that the omission of paragraph (h) from the quoted phrase means that credit of excess payments has no application to agencies falling within section 8.2 and hence it follows somehow that this "demonstrates clearly that the Legislature did not intend for credit to be allowed under Section 8(h) to any electing city which shall have paid out of municipal funds no more than the amount specified in the District's tax levy resolution." This seems to be a non sequitur. The omission of any reference to subdivision (h) of section 8 implies that there shall be no credit given for excess avoidance payments. Section 8.2 does not purport to be declaratory or interpretive and section 8, subdivision (h), was not amended. Difference in language of the two sections points to difference in legislative intent.

" 'Where a statute, with reference to one subject contains a given provision, the omission of such provision

[3]Respondents' brief says that § 8.2 "provides substantially identical procedure whereby a public agency (as therein defined) whose corporate area is included within an overlying municipality, the area of which latter entity is included, as a separate unit, in a metropolitan water district, is authorized to make its declaration of intention, election, and payment, respecting the amount of taxes to be derived from the area of such metropolitan water district within the electing public agency, as such amount is computed, declared, and fixed by the resolution making the tax levy of the metropolitan water district for the particular fiscal year."

The district's ninth annual report, at page 72:

"The Metropolitan Water District Act was amended in the 1947 session of the California Legislature in two particulars:

"1. *Taxation*—The first relates to the method of handling the problem which arises because of the constitutional provision relating to collection of taxes upon personal property unsecured by lien upon real property. Such taxes are normally collected during the assessment period and, under the language of the Constitution, the tax rate for the preceding year is applied to such personalty. . . . If the municipality in question elected to relieve its property owners of District taxes, in whole or in part, the District was required to make refunds to those who had paid the unsecured taxes on personal property. . . . The object of the 1947 amendment was to obviate double payment, with the resulting refunds. . . . By this procedure, owners of property appearing on the unsecured tax roll and owners of property appearing on the secured tax roll will be treated with exact mathematical equality as to the percentage of their taxes that will be paid out of municipal funds. There will be no overpayment and no occasion for refunds."

from a similar statute concerning a related subject [in this case, the *same* subject] is significant to show that a different intention existed.' (23 Cal.Jur. 778, § 154; *Estate of Garthwaite* (1933), 131 Cal.App. 321, 326 [21 P.2d 465].) ▮ It is ordinarily to be presumed that the Legislature by deleting an express provision of a statute intended a substantial change in the law. (*Southern Pacific Co.* v. *McColgan* (1945), 68 Cal.App.2d 48, 54-55 [156 P.2d 81].) It has been repeatedly declared that where changes have been introduced by amendment it is not to be assumed that they were without design and, further, that by substantially amending a statute the Legislature demonstrates an intent to change the preexisting law. (See *Loew's Inc.* v. *Byram* (1938), 11 Cal.2d 746, 750 [82 P.2d 1], and cases therein cited.)'' (*People* v. *Valentine*, 28 Cal.2d 121, 142 [169 P.2d 1].) To the same effect, see *City of Port Hueneme* v. *City of Oxnard*, 52 Cal.2d 385, 395 [341 P.2d 318]; *Richfield Oil Corp.* v. *Crawford*, 39 Cal.2d 729, 735 [249 P.2d 600]; *People* v. *Town of Corte Madera*, 97 Cal.App.2d 726, 729 [218 P.2d 810]; *Estate of Simpson*, 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991]; *Metropolitan Water Dist.* v. *Toll*, 1 Cal.2d 421, 428 [35 P.2d 519]; 45 Cal.Jur.2d, § 179, p. 679.

Essentially, counsel for the district really contend for a repeal by implication of subparagraph (h) of section 8 by virtue of omission of any reference thereto in section 8.2, subdivision (d), although they reject that nomenclature. This is contrary to settled principles of statutory construction. ▮ ''The presumption is against repeals by implication, especially where the prior act has been generally understood and acted upon. ▮ To overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together. ▮ Where a modification will suffice, a repeal will not be presumed.'' (*Penziner* v. *West American Finance Co.*, 10 Cal.2d 160, 176 [74 P.2d 252].) See also *People* v. *Harmon*, 54 Cal.2d 9, 16-17 [4 Cal.Rptr. 161, 351 P.2d 329]; *California Drive-In Restaurant Assn.* v. *Clark*, 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028]; *People* v. *Martin*, 188 Cal. 281, 285 [205 P. 121, 21 A.L.R. 1399]; *People* v. *Sands*, 102 Cal. 12, 18 [36 P. 404].)

It is argued by petitioner that adoption of respondents'

construction of the statute would result in a gift of public funds. Our disposition of the major controversy makes it unnecessary to discuss this point.

 As a matter of strict law and one of equity and good conscience, the city is entitled to the credit which it claims herein.

Let the peremptory writ issue.

Fox, P. J., and Kincaid, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.