[Civ. No. 150. Fifth Dist. Dec. 11, 1962.]

MODESTO IRRIGATION DISTRICT, Plaintiff and Appellant, v. CITY OF MODESTO, Defendant and Respondent.

Warren F. Gant for Plaintiff and Appellant.

Allen Grimes, City Attorney, for Defendant and Respondent.

STONE, J.—The Modesto Irrigation District has appealed from a judgment in declaratory relief holding valid a City of Modesto ordinance regulating the location of overhead utilities and denying an injunction to permanently enjoin the city from enforcing said ordinance.

District, plaintiff and appellant herein, is engaged in the business of transmitting, distributing and selling electric power pursuant to specific statutory authorization embodied in the Water Code of California, division 11, part 5, chapter 1, article 3, sections 22115 et seq. The city ordinance in question, requiring the location of overhead utilities on lot easements rather than along city streets, with certain exceptions, was enacted pursuant to the Subdivision Map Act, Business and Professions Code sections 11500 et seq. Section 11525 provides, in part, that ''Every county and city shall adopt an ordinance regulating and controlling the design and improvement of subdivisions.''

District's main contentions are that the location of power lines is a matter of statewide concern, that the State of California has exclusive jurisdiction over the franchise of power lines in cities, that the ordinance in question is an attempt by city to regulate an activity in a field completely occupied by the state, that the ordinance is therefore invalid and unconstitutional. ▪ The questions here presented must be determined without reference to the comprehensive state system established to regulate public utilities, because district, as a political subdivision of the state, is not subject to the constitutional and statutory provisions which regulate public utilities.

The first question is whether the location, construction and maintenance of power poles is a matter of state concern. Apparently the precise question has not been decided, but there are decisions which we believe are controlling. In *Polk* v. *City of Los Angeles,* 26 Cal.2d 519 [159 P.2d 931], although the Supreme Court was primarily concerned with the maintenance of overhead power lines, it said, at page 540: ''The safety of overhead wire maintenance is a matter of statewide, rather than local, concern, and the state law is paramount.'' It may be argued that the quoted portion of the *Polk* case is not ''on all fours'' with the question before us, since it is concerned with maintenance rather than location of power lines, but certainly *Pacific Tel. & Tel. Co.* v. *City & County of San Francisco,* 51 Cal.2d 766 [336 P.2d 514], is apposite. In discussing the construction and maintenance of telephone

lines in streets within a city, the Supreme Court had this to say, at pages 767-768:

"This is the sole question necessary for us to determine: *Is the construction and maintenance of telephone lines in the streets and other public places within the city today a matter of state concern or a municipal affair under sections 6 and 8 of article XI of the state Constitution?*

"We are of the opinion that the construction and maintenance of telephone lines in the streets and other public places within the city is today a matter of state concern and not a municipal affair."

▅▅ The principle adopted by the Supreme Court in relation to the construction and maintenance of telephone lines applies equally to power lines.

Having decided that the placement, construction and maintenance of power lines is a matter of state concern, the question narrows to whether city's ordinance regulating district's right to maintain power lines in a city street is an invasion of state sovereignty. District analogizes the reasoning in *Hall* v. *City of Taft*, 47 Cal.2d 177, 181 [302 P.2d 574], and *Town of Atherton* v. *Superior Court*, 159. Cal.App.2d 417, 421 [324 P.2d 328], which cases hold that a city may not enact ordinances that conflict with general laws on statewide matters. However, there was an additional circumstance present in the *Hall* and *Atherton* cases which was determinative. In those cases the court found not only that "the public school system is of statewide supervision and concern" but also that the particular city ordinance conflicted with state legislative enactments. ▅▅▅ We do not believe the ordinance before us is in conflict with any state statute. Rather, it was enacted pursuant to an express delegation of authority by the state. Water Code section 22476 provides:

"A district may not construct and operate electric light and power lines along, over, under, or upon any road within any city unless permission to do so is granted by the governing body of the city, which in so doing may impose reasonable conditions upon the proposed use."

It is apparent that the only restriction imposed by the state in delegating this authority is that any condition imposed by a city must be reasonable.

The fact that the ordinance regulating the construction of electric power lines within the City of Modesto is a part of the city's ordinance regulating and controlling the design and improvement of subdivisions, is immaterial. ▅▅ The crit-

ical question is whether the ordinance exceeds the power delegated to city pursuant to Water Code section 22476, *supra*. We must construe the provisions of the Water Code with reference to those of the Subdivision Map Act, since every statute should be construed with reference to the whole system of law of which it is a part. (*Stafford* v. *Los Angeles etc. Retirement Board*, 42 Cal.2d 795, 799 [270 P.2d 12]; *Stafford* v. *Realty Bond Service Corp.*, 39 Cal.2d 797, 805 [249 P.2d 241].)

 It is also fundamental that where two statutes are *in pari materia* they should be not only construed together, but they should be reconciled so as to uphold both of them if reasonably possible. (*Pierce* v. *Riley*, 21 Cal.App.2d 513, 518 [70 P.2d 206].) This rule applies even though one statute deals generally with the subject (Water Code § 22476) and the other (Bus. & Prof. Code §§ 11525 et seq.) legislates upon the same subject with greater particularity.

Furthermore, statutes concerned with planning evidence a clear pattern of legislative intent that cities and counties shall plan for and control land use within their boundaries. For example, Government Code section 53091 was enacted in 1959 for the purpose of vesting in cities and counties some of the control over zoning and building restrictions which had been denied them by the decisions in the *Hall* and *Atherton* cases, *supra*. District points out that the last sentence of 53091 exempts water districts from zoning and building ordinances. The sentence reads: "Building ordinances and zoning ordinances of a county or city shall not apply to the location or construction of facilities for the production, generation, storage, or transmission of water or electrical energy by a local agency." This sentence, contends district, negates any legislative intent that local regulatory ordinances, including those enacted pursuant to the Subdivision Map Act, shall apply to water districts. However, the decisive fact is that the Subdivision Map Act is not mentioned in section 53091, while zoning and building restrictions are.

 It must be assumed that the Legislature was aware of the Subdivision Map Act, as amended in 1953, at the time it enacted Government Code section 53091 in 1959. Specific exemption of local agencies transmitting water or electrical power, from building ordinances and zoning ordinances, but omitting to exempt them from ordinances enacted pursuant to the Subdivision Map Act, is significant. It evidences an intent that said agencies should remain subject to local ordinances enacted pursuant to the Subdivision Map Act. (*People*

v. *Valentine*, 28 Cal.2d 121, 142 [169 P.2d 1] ; *City of Burbank* v. *Metropolitan Water Dist.*, 180 Cal.App.2d 451, 461-462 [4 Cal.Rptr. 757] ; *Western States Newspapers, Inc.* v. *Gehringer*, 203 Cal.App.2d 793, 799 [22 Cal.Rptr. 144].)

District next calls attention to the language of Water Code section 22476, which provides that a city "may impose reasonable conditions upon the proposed use." District, emphasizing the word "reasonable," argues that the conditions imposed by the ordinance in question are prohibitory and therefore unreasonable. The portion of the ordinance from which the appeal is taken is set forth in appellant's brief, as follows:

"(6) Location of Overhead Utilities. All overhead utilities shall be placed in rear lot and side lot easements, except where utilities cross streets, or must be located outside of the easements for other good and sufficient reasons as determined by the Planning Commission as follows:

"(aa) In alleys, where alleys are permitted by the Planning Commission;

"(ab) In the street where topography precludes utility construction in easements, such as on steep hillsides;

"(ac) In streets where the subdivision is along river frontages, canals, or ditches;

"(ad) In streets in conjunction with multiple dwelling developments where streets constitute service roads; where buildings front away from streets; or where building lot area exceeds twenty thousand (20,000') square feet or lot width exceeds two hundred (200') feet;

"(ae) For other good and sufficient reasons."

It is apparent that the ordinance does not prohibit the use of streets by district. It does provide that overhead utilities shall be placed in rear lot and side lot easements, except where utilities cross streets or where they must be located outside the easements for other good and sufficient reasons. The ordinance lists four specific exceptions, and concludes with a fifth general exception, "For other good and sufficient reasons." The general restrictions and limits on the use of streets are imposed in accordance with city's over-all plan of developing subdivisions within its boundaries, and clearly do not prohibit use of streets.

District makes the further argument that, conceding arguendo the restrictions are not prohibitory, they nonetheless impose unreasonable burdens upon district. It is pointed out that it is more difficult to service power lines located across

easements along the back and at the side of lots rather than in the street; also that it is impossible to use modern methods and mechanized equipment to maintain the lines. These added burdens, argues district, will cause an increase in rates and a less desirable standard of service.

The mere showing that the maintenance of power lines along lot easements rather than on city streets is more burdensome, more troublesome, or more expensive, does not, *ipso facto,* make the restrictions unreasonable. The Supreme Court, in considering the question of the reasonableness of subdivision restrictions enacted pursuant to the Subdivision Map Act, said in *Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31 [207 P.2d 1, 11 A.L.R.2d 503], at page 41: "Questions of reasonableness and necessity depend on matters of fact. They are not abstract ideas or theories." Whether the restrictions here are unreasonable was presented to the trial court as a question of fact. Evidence was adduced thereon, and the trial court decided this fact issue against district.

In *Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141 [346 P.2d 737], the Supreme Court had this to say, at page 148: "The means provided in a statute must be accepted as being reasonably designed to accomplish its objective unless it is unquestionable that they are improper." The same rule applies to a municipal ordinance. (*Lynch Meats of Oakland, Inc.,* v. *City of Oakland,* 196 Cal. App.2d 104, 107 [16 Cal.Rptr. 302].)

It is contended also that power lines on lot easements constitute a hazard to the public because of structures which will be placed on easements beneath power lines in subdivisions. Many of the objections to the maintenance of power lines on lot easements foreseen by district, were anticipated by city and prohibited by another section of the ordinance. For example, buildings or structures are forbidden on easements, and section 4-4.302(e)(4) provides that "It shall be the responsibility of the owner and/or occupant of real property to maintain any public utility easement area located thereon in such a manner that its condition will not interfere with the proper operation and maintenance of public utility facilities located thereon."

A witness called by district testified to the inconvenience, danger and expense of lot easements for power line placement and maintenance. However, on cross-examination he testified that it has been the trend the last few years for local agencies to eliminate provisions for alleys in subdivisions and to require

that overhead utility facilities be located on easements. Further, the trial court found that "There are many places in the City where plaintiff renders services in rear lot or side lot easements."

Also bearing upon the question of the reasonableness of the restrictions is the following statement in district's opening brief: "Neither does the Appellant challenge the authority of the City to control and regulate privately owned public utilities through the enactment of subdivision ordinances enacted in pursuance of the requirement in that regard of the Subdivision Map Act."

Thus district concedes that a privately owned public utility which is not a political subdivision of the state, will be required to maintain its pole lines in accordance with the ordinance. To require district to maintain its power lines on the same easement that the public utility companies must use, hardly seems unreasonable. On the other hand, two sets of utility poles, those of district in the street, and those of private utilities on an easement, would fly in the face of planned land use, as well as frustrate the intent and purpose of the Subdivision Map Act.

The judgment is affirmed.

Conley, P. J., concurred. Brown, J., deeming himself disqualified, did not participate.

Appellant's petition for a hearing by the Supreme Court was denied February 6, 1963.