[Civ. No. 20329. Third Dist. Feb. 9, 1982.]

JOHN E. BURKE et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
GENERAL MOTORS CORPORATION, Real Party in Interest.

**COUNSEL**

Weintraub, Genshlea, Giannoni & Sproul, Joseph S. Genshlea and Steven E. Harrold for Petitioners.

No appearance for Respondent.

O'Melveny & Myers, Girard E. Boudreau, Jr., Downey, Brand, Seymour & Rohwer, J. Keith McKeag, Stephen J. Meyer, William Vaughn, Otis M. Smith and Robert W. Culver for Real Party in Interest.

OPINION

BLEASE, J.—This case arises from the refusal of General Motors Corporation (General Motors) to approve the sale of a dealer franchise owned by John E. Burke, individually, and Tucker, Inc., doing business as Burke Chevrolet (petitioners). Petitioners contend, among other things, that General Motors' refusal was based on a policy requiring racial discrimination. The trial court granted General Motors a partial summary judgment. Petitioners seek a writ of mandate requiring the trial court to vacate its order and to enter an order denying partial summary judgment. We deny the requested relief.

### FACTS

Commencing in February 1973 and continuing into 1977, petitioners were a franchised Chevrolet dealer in Folsom, California, pursuant to a written agreement with General Motors.[1] They experienced financial difficulties and in June 1977, Burke advised General Motors he wished either to find a financial participant or to terminate his dealer sales and service agreement and sell his business assets to a third party.

General Motors has a policy of processing applicants and their proposals for a new dealer appointment on a one-at-a-time basis.[2] General Motors recommended an existing dealer, Don Strough of Val Strough Chevrolet in Oakland. Strough met with Burke and investigated Burke's financial condition and determined that a buyout would be very hard to complete. He withdrew as an interested buyer. General Motors shortly thereafter recommended Walter Bratten and Tommy Hicks as candidates to purchase the assets of Tucker, Inc., and become the franchised Chevrolet dealer in Folsom. Bratten is white and Hicks is black.

---

[1]The dealer sales and service agreement gives General Motors the absolute right to choose its franchisees, constrained only by Vehicle Code section 11713.3, subdivisions (d) and (e), which provide that a manufacturer may not unreasonably withhold its consent to the transfer of its franchise to a third party. Petitioners' first through fourth and seventh through tenth causes of action are predicated on the alleged violation of these statutes. These causes of action as well as four related common law causes of action were left untouched by the order of the trial court.

[2]A memorandum to regional and zone managers describes the policy as follows: "For many years it has been the practice of Chevrolet to process applicants and their proposals for a new dealer appointment or replacement point on a 'one-at-a-time' basis. Reasons for this practice include the confidential nature of the transaction, the need for an orderly consideration of candidates on the basis of the Zone's appraisal of their relative qualifications and the desirability of insuring equitable treatment of all parties."

General Motors has a policy for the recruitment of minority candidates for dealerships and Bratten and Hicks were selected pursuant to that policy.

Petitioners engaged in negotiations with Bratten and Hicks. No agreement was consummated and Tucker, Inc., failed and went out of business in September of 1977.

About the time that General Motors proposed Bratten and Hicks, petitioners entered into separate negotiations with WBL Corporation and James McCord. Petitioners claim these negotiations resulted in enforceable agreements for the sale of the assets of Tucker, Inc., and that General Motors unlawfully refused to approve them as the franchised Chevrolet dealer in Folsom, resulting in financial losses to petitioners.

Petitioners claim that General Motors excluded WBL Corporation or McCord as buyers pursuant to a policy which required discrimination based on race against them in violation of Business and Professions Code section 16721. They further claim that this refusal constitutes a restraint of trade in violation of Business and Professions Code section 16720, subdivision (c). General Motors was granted a partial summary judgment on these claims. We review the propriety of the judgment.

DISCUSSION

I

■ Petitioners' racial discrimination claims are founded on the provisions of Business and Professions Code section 16721,[3] which provide that no person "shall be excluded from a business transaction on the ba-

---

[3]Business and Professions Code section 16721 provides, in pertinent part: "(a) No person within the jurisdiction of this state shall be excluded from a business transaction on the basis of a policy expressed in any document or writing and imposed by a third party where such policy requires discrimination against that person on the basis of the person's sex, race, color, religion, ancestry or national origin or on the basis that the person conducts or has conducted business in a particular location.

"(b) No person within the jurisdiction of this state shall require another person to be excluded, or be required to exclude another person, from a business transaction on the basis of a policy expressed in any document or writing which requires discrimination against such other person on the basis of that person's sex, race, color, religion, ancestry or national origin or on the basis that the person conducts or has conducted business in a particular location.

"(c) Any violation of any provision of this section is a conspiracy against trade."

sis of a policy expressed in any ... writing[4] ... [which] requires discrimination against that person on the basis of the person's ... race ...."[5] In essence, they claim that the recommendation of Bratten and Hicks, as minority candidates, coupled with a policy to recommend candidates one at a time gives rise to an inference of exclusion of petitioners' candidates on the basis of *their* race.

We review these claims pursuant to the statutory standard for issuance of a summary judgment. A summary judgment shall be granted when all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Evidence in support of the judgment may include inferences reasonably deducible from the papers submitted unless they are contradicted by other inferences which raise a triable issue of fact. (Code Civ. Proc., § 437c; see *Hepp* v. *Lockheed-California Co.* (1978) 86 Cal.App.3d 714, 717-718 [150 Cal.Rptr. 408].) This appeal turns upon the inferences to be drawn from the submitted papers.

None of the documents in evidence states that General Motors requires *exclusion* of applicants due to their race; rather, they express General Motors' desire to recruit qualified minority applicants for dealerships. The policy is contained, among other places, in a memo which states in part: "General Motors and Chevrolet continue to actively seek and bring into the retail automobile business qualified minority

---

[4]General Motors asks to construe Business and Professions Code section 16721 so that it encompasses only a policy which, in so many words, requires the exclusion of any person from a business transaction on the basis of race. We do not read the statute so narrowly. Although the original purpose of section 16721 was to prevent California businesses from discriminating because of the Arab boycott of Israel (*Review of Selected 1976 California Legislation* (1977) 8 Pacific L.J. 165, 201), its language is not so limited. The section refers to a policy "expressed in any ... writing," from which we conclude that the policy must be manifest in a writing or writings and any inferences which may reasonably be drawn therefrom. The recognized means of discerning the meaning of the writings are not precluded by the statute.

[5]Petitioners have standing to sue General Motors for the claimed discrimination. Business and Professions Code section 16750, subdivision (a), provides in part: "Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction ... to recover three times the damages sustained by him, and shall be awarded a reasonable attorneys' fee together with the costs of the suit. [¶] Such action may be brought by any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant." Standing is clearly not limited to persons discriminated against. Having alleged "injury in his business" by reason of discrimination in violation of Business and Professions Code section 16721, petitioners have established standing.

individuals. If you know of a deserving person that should be considered for the General Motors Dealer Development Academy, your Zone Manager would like to know and to discuss this with you." A "MEMO TO FILE," dated September 15, 1977, regarding the transaction involved in this case reads in part: "Mr. Barrett again pointed out that General Motors had been trying to help the minorities by putting them in a dealership that we thought they were qualified to handle and Mr. Burke admitted that he thought Tommy Hicks was a good man." Petitioners say that these and similar written documents create a triable issue of the fact of violation of Business and Professions Code section 16720. We disagree.

These documents show only a minority recruitment policy operating within a policy of recommending franchise candidates one at a time. Petitioners concede that the recruitment policy, as such, is not within Business and Professions Code section 16721. The concession is compelled by the language of Business and Professions Code section 16721. It focuses upon the exclusion of persons from a business transaction on the basis of *their* race. It does not encompass a minority *recruitment* policy. But petitioners argue that when the policy is coupled with the one-at-a-time recommendation policy, an inference of exclusion of those not presently recommended may be drawn and (impliedly) that their race is at issue. We cannot agree. The existence of and race of petitioners' candidates for the franchise are not contemplated by the General Motors policy. As far as the policy goes, there may be, at any time, no interested purchaser other than the proposed minority candidate.

Petitioners then ask us to prize off General Motors' statements concerning the selection of Bratten and Hicks from the documents expressing General Motors' minority recruitment policy. They claim that an inference of required racial exclusion can be drawn from such statements, read together with the one-at-a-time procedure. Even on such a truncated view of the evidence no such inference is created. The documents do not show that General Motors was excluding Burke's candidates, except derivatively of the one-at-a-time policy, or that their race was considered. There was no *required* exclusion. Moreover, the whole record before us, which we must consider (Code Civ. Proc., § 437c), refutes the claimed inference. If, as petitioners suggest, there is a covert policy of racial exclusion which is masked by the minority recruitment policy, documents must be offered permitting that inference. There is no evidence that General Motors sought to exclude anyone, let alone by

race. Accordingly, there is no triable issue of fact bringing this action within Business and Professions Code section 16721.[6]

## II

■ Petitioners' complaint alleged that defendants General Motors, Bratten and Hicks combined to affect the sales price of petitioners' dealership assets in violation of Business and Professions Code section 16720, subdivision (e)(4). It alleged this activity constituted a restraint of trade in violation of Business and Professions Code section 16720, subdivision (c).[7] Summary judgment was proper. Petitioners' injuries, if any, arose not from any restriction in trade or commerce, but from General Motors' claimed wrongful act of racial exclusion. Since we have held that the partial summary judgment on that claim was proper, the restraint of trade claim must fail.

The petition is denied and the alternative writ is discharged.[8] The stay order heretofore issued is dissolved.

Reynoso, Acting P. J., and Young, J.,* concurred.

---

[6]General Motors also contends that the existence of two Vehicle Code sections (§ 3060 et seq. and § 11713 et seq., as well as Civ. Code, §§ 51.8 & 80 et seq., respectively) preempt the application of Business and Professions Code section 16721. We read the statutes together and do not find them in conflict. (See *Modesto Irr. Dist.* v. *City of Modesto* (1962) 210 Cal.App.2d 652, 656 [27 Cal.Rptr. 90].)

[7]Business and Professions Code section 16720 states in part: "A trust is a combination of capital, skill or acts by two or more persons for any of the following purposes:

"...

"(c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

"...

"(e) To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they do all or any or any combination of any of the following:

"...

"(4) Agree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected."

[8]General Motors' argument concerning the trial court order regarding witness fees is not properly before us on the pleadings filed in this action.

*Assigned by the Chairperson of the Judicial Council.